UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PANAGIOTA HEATH | * | CIVIL ACTION NO. 13-4978 |
| | * | |
| | * | MAGISTRATE JUDGE |
| VERSUS | * | JANIS VAN MEERVELD |
| | * | |
| SOUTHERN UNIVERSITY SYSTEM | * | DIVISION: 1 |
| FOUNDATION AND MOSTAFA | * | |
| ELAASAR | * | |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is the Motion for Summary Judgment filed by defendants Southern University System Foundation and Mostafa Elaasar, as remanded by the United States Fifth Circuit Court of Appeals on April 4, 2017. In accordance with the Fifth Circuit's Order, this Court has reconsidered whether plaintiff Panagiota Heath can survive summary judgment dismissing her claims that she was subjected to a hostile work environment on account of her sex (her claim under Title VII of the Civil Rights Action of 1964) and/or on account of her sex, race, religion, and national origin (her claim under 28 U.S.C. § 1983) by considering alleged harassment as early as mid-2011 when she returned to work from a sabbatical.[1] For the following reasons, the Court finds that even considering the entire relevant time period as instructed by the Fifth Circuit, the defendants are entitled to summary judgment.

Background

Panagiota "Penney" Heath is a female, a Christian, and a member of the Greek Orthodox Church. She was born in Greece and immigrated to the United States after high school. She began working as a professor of mathematics at Southern University at New Orleans ("SUNO") in 1996.

---

[1] The Fifth Circuit affirmed summary judgment dismissing Heath's Title VII retaliation claim, and Heath did not appeal the dismissal of her Title VII claims on the basis of race, religion, or national origin. According, the Court does not reconsider those claims.

1

She applied for and received tenure as an associate professor in 2001. In opposition to her motion for summary judgment, Dr. Heath presents letters and emails from students thanking her for her teaching (some undated, some from 2010). The letters indicate that Dr. Heath is well respected and loved by her students for the time and effort she puts into helping them.

The relevant time period for this lawsuit begins in the middle of 2011 when Dr. Heath returned from a year-long sabbatical, taken for health reasons. However, by way of background, the Court notes that the hostile work environment that forms the backbone of Dr. Heath's remaining claims is alleged to have begun long before 2011. According to Dr. Heath, her problems started when defendant Mostafa Elaasar became chair of the math department in 2003. Dr. Elaasar is a male, he is Muslim, and he is of Egyptian decent. Dr. Heath asserts that in 2003 she was called "crazy" at a faculty meeting, in 2005 a student was pressured to write a complaint about Dr. Heath, and in 2008 Dr. Heath was denied a request for a sabbatical because Dr. Elaasar was not convinced she was capable of writing a book. In 2005, Dr. Heath wrote a 10 page, single-spaced letter complaining about "several incidences of harassment and antagonistic behavior toward" her by Dr. Elaasar and Dr. Omojola (Dean of Science). (Rec. Doc. 70-11, at 3-12). She also described an incident where another teacher, Mrs. Davis, called her "white trash." But nowhere did she attribute the purported harassment by Dr. Elaasar and Dr. Omojola to her sex, race, religion, or national origin. In her deposition, Dr. Heath described Dr. Elaasar as a radical Muslim, which she said was based on a conversation he had with her after Hurricane Katrina when they had to drive to Baton Rouge, in which he explained that radical Muslims believe that the time will come when Muslims are going to rise and kill all the Christians. She admitted she did not feel personally threatened by this discussion. In 2009, Dr. Heath filed a lawsuit alleging discrimination on the basis of sex and national origin. That lawsuit was ultimately abandoned.

The evidence submitted by Dr. Heath in opposition to summary judgment includes an e-mail chain between herself and Dr. Singleton, a female, African-American professor in the math department at SUNO. The emails run from February 4, 2010, through February 11, 2010. Of interest to the issues in this case, Dr. Singleton's last email to Dr. Heath stated that:

> I have experience a paradigm shift at SUNO going from Dr. Perry, Chair to Dr. Elaasar, Chair . . . We do have a new culture of people working for SUNO. . . . Now, I am working with a different culture of people (mostly males), who has been known to be dominating to women. This happens often when working in the sciences. There is a gender differences. . . . I hate the part of my job but its reality that majority of males major in sciences and mathemtics. If you are a strong liberal woman, then your job is going to be tough.

(Rec. Doc. 70-14) (all errors in original). Earlier in the email chain, Dr. Singleton wrote:

> The math unit has a long ways to go. We are the only unit that has to share the same office . . . . I do not think that this is a gender issue. It is a math unit issue. No one in the math unit responded to the biology new hire presentation. We (math unit) sat and were very quiet and wasted time that is my opinion. That is not a gender issue.

Id. (all errors in original).

In a letter dated April 19, 2010, Dr. Heath stated that she would not participate in any further meetings of the mathematics department because she is tired of being belittled. She stated that she was "told that [she is] 'white trash;' [she] was told to 'shut up your mouth so I can speak damn it;' [and she has] been ignored when [she is] talking." (Rec. Doc. 70-12, at 17). She added that she "was told that Dr. Elassar [sic] does not let me participate in any meetings such as hiring committees because 'I talk too much for a woman.'" Id. In her deposition, Dr. Heath admitted that her knowledge of this alleged remark came to her indirectly. (Rec. Doc. 67-4, at 7). She testified that Dr. Omojola told her, "You know why they don't let you work, participate in meetings? . . . Because you talk too much for a woman." Id. Dr. Heath attributes this remark to Dr. Elaasar because Dr. Omojola was very close with Dr. Elaasar. Id.

3

Later in April 2010, Louise Kaltenbaugh, the Director of Alternative Certification at SUNO wrote Dr. Adegboye, Vice Chancellor of Academic Affairs, indicating that she had spoken to Dr. Heath and believed that Dr. Heath was experiencing professional and personal harassment. (Rec. doc. 70-16, at 1). She asked Dr. Adegboye "to look into this matter to make sure that Dr. Heath is not being 'railroaded' due to cultural and gender biases." Id.

As noted above, Dr. Heath took a year-long sabbatical from 2010 through 2011 for health reasons. She contends that when she returned, the harassment continued. She asserts that Dr. Elaasar did not allow her to participate in committees, teach courses online, or teach courses above Math 151. She complains that Dr. Elaasar did not respect her academic freedom to grade her students according to her judgment. She says Dr. Elaasar refused to re-assign two classes to her during the summer semester when her previously assigned classes were cancelled. She says that after he agreed to allow her to teach two evening classes in fall 2012, he changed his mind at the last minute and gave the classes to another faculty member. She complains that Dr. Elaasar humiliated her during departmental meetings and did not allow her to finish talking. She says Dr. Elaasar undermined her to her students. She says that Dr. Elaasar did not assign her overload classes, and as a result, she was forced to seek extra employment in other places. She says that Dr. Elaasar denied her request to teach in the tutoring lab and isolated her from everything that went on in the department by working with the other teachers behind closed doors. She complains that she was not allowed to write grants although this area is a specialty for her. She complains that Dr. Elaasar would not allow her to include in her office hours those hours she spent teaching two disabled students in another teacher's office. She says Dr. Elaasar refused to provide the minutes of department meetings (it is unclear if he refused to provide these to Dr. Heath, or if he refused

4

to provide them to anyone). She says that Dr. Elaasar refused to allow her to teach students who were failing or who needed make up tests at 7:00 a.m.

Dr. Heath conveyed the aforementioned complaints to Dr. Adegboye, in a letter dated September 19, 2012. (Rec. Doc. 70-17, at 1-3). Notably, the letter makes no reference to her sex, national origin, race, or religion as a basis for Dr. Elaasar's actions and inactions. In fact, Dr. Heath stated that she did "not understand why he holds [her] back and strives to portrait [her] (sic) as unproductive faculty while he promotes others."

An undated letter that may have been written in the fall of 2012 by Dr. Heath to Dr. Mokossa, Dean of Science, complains about an incident where she approached Dr. Elaasar to convey complaints from her students about their unsatisfactory experiences in the tutoring lab. (Rec. Doc. 70-17, at 4-5). Dr. Heath writes that Dr. Elaasar became angry and told her to "stop misbehaving." Id. She complained to Dr. Mokossa that Dr. Elaasar was "creating a hostile work environment" and that she had been experiencing "unfair treatment." Id. She referred to his "personal hostility towards" her. Id. She did not reference her sex, national origin, race, or religion as a basis for the hostility.

Dr. Heath wrote a letter to Dr. Ukpolo, Chancellor, Dr. Adegboye, Vice Chancellor for Academic Affairs, Dr. Bishop, Assistant to the Vice Chancellor Academic Affairs, Dr. Mokosso, Dean, and Ronald Thomas, Director of Human Resources on November 18, 2012. (Rec. Doc. 70-17, at 6-9). She began by explaining why she schedules tutoring for her students at 7:00 a.m. She complained of a "pattern of harassment" and asked the recipients to stop Dr. Elaasar's "unfair, discriminatory treatment towards me." Id. She does not elaborate on the "harassment" or "unfair, discriminatory treatment" by any reference to sex, national origin, race, religion, or any other

5

protected class. She concluded that "[i]t is obvious to me that Dr. Elaasar is trying very hard to discredit me as a professional in retaliation for the lawsuit." Id.

In the fall of 2012, one of Dr. Heath's students, Donald Anderson, met with Dr. Elaasar and asked Dr. Elaasar "to explain his reasons for disrespecting Dr. Heath and otherwise giving her a hard time." (Rec. Doc. 70-6). He told Dr. Elaasar that "it appeared to [Anderson] that [Dr. Elaasar] was bullying her and speaking badly about Heath without Heath's knowledge." In his declaration, Anderson explains that he "learned that Dr. Elaasar regarded Dr. Heath as a person whom he couldn't control. He considered her untrustworthy. He obviously was angry with her." Anderson goes on to say that he "concluded from [Dr. Elaasar's] attitude and state of mind that he was unhappy that she was not more submissive to his authority, and that he felt that she was disrespectful of him, and failed to acknowledge his role as her superior."

Following his meeting with Dr. Elaasar, Anderson circulated a petition among the students with a "demand for justice on behalf of Dr. P. Heath," asking that her "**work environment be re-directed as NON-HOSTILE, NON-HARASSING and CONSTITUTES ABSOLUTELY NO RETALIATION WHATSOEVER because of the Petition**." (Rec. Doc. 70-10) (emphasis in original). The Petition did not assert that the purported hostilities were due to Dr. Heath's sex, race, religion, or national origin. The students requested the replacement of Dr. Elaasar. Hundreds of students signed the petition.

In March 2013, Dr. Heath filed a Charge of Discrimination with the Equal Employment Opportunity Commission. Dr. Heath complained that since the filing of her 2009 lawsuit, she had been harassed, intimidated, and humiliated by Dr. Elaasar. After describing some of the harassment, she concluded that "I believe that I have been retaliated against because I filed a law suit against Southern University At New Orleans, based on gender, female . . . ." (Rec. Doc. 67-

5). In her declaration, Dr. Heath similarly explains that she believed she had been "retaliated against for filing a lawsuit." (Rec. Doc. 70-2, at 9). In her deposition in this matter, Dr. Heath explained that she believes that as an Egyptian, Dr. Elaasar believes women should be "walking behind the man," while as a Greek, she believes that a woman is "just like as smart as a man, as good as a man in the work force." (Rec. Doc. 67-4, at 19). She added that this, along with retaliation for the lawsuit, "discrimination for gender, discrimination for the religion, they're all factors . . . that contributed to his behavior." Id. at 20. However, Dr. Heath admitted that she could not recall Dr. Elaasar ever making a sexist remark directly to her. Id. at 8.

## Procedural Background

Dr. Heath filed this lawsuit on July 3, 2013. The parties consented to proceed before the Magistrate Judge.[2] On May 25, 2016, the Magistrate Judge granted summary judgment in favor the defendants, dismissing Dr. Heath's claims. In concluding that Dr. Heath's claims could not survive summary judgment, the Magistrate Judge ruled that the limitations period prevented consideration of harassment that occurred more than 300 days before the filing of her EEOC charge in the case of her Title VII claim and conduct more than one year prior to the filing of her lawsuit in the case of her § 1983 claim. Dr. Heath appealed. The Fifth Circuit affirmed the dismissal of Dr. Heath's retaliation claim, but remanded Dr. Heath's claim that she suffered a hostile work environment on account of her sex under Title VII and her claim that she suffered a hostile work environment on account of her sex, race, religion, and national origin under § 1983. In ruling, the Fifth Circuit concluded that the continuous violation doctrine was applicable to Dr. Heath's hostile work environment claims and that Dr. Heath has alleged a continuing course of conduct dating back to her return from leave in 2011. Thus, in determining whether Dr. Heath's claims can survive

---

[2] At that time, the assigned magistrate judge was Sally Shushan. Judge Shushan has since retired, and the undersigned was assigned to the matter.

7

summary judgment dismissing her claims that she was subjected to a hostile work environment on account of her sex (her claim under Title VII) and/or on account of her sex, race, religion, and national origin (her claim under 28 U.S.C. § 1983), this Court must now consider all harassment that allegedly occurred from the time Dr. Heath returned from her sabbatical in mid-2011.

Law and Analysis

1. *Summary Judgment Standard*

Summary Judgment under Federal Rule of Civil Procedure 56 must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56. The movant has the initial burden of "showing the absence of a genuine issue as to any material fact." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). The respondent must then "produce evidence or designate specific facts showing the existence of a genuine issue for trial." Engstrom v. First Nat. Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995). Evidence that is "merely colorable" or "is not significantly probative" is not sufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"An issue is material if its resolution could affect the outcome of the action." Daniels v. City of Arlington, Tex., 246 F.3d 500, 502 (5th Cir. 2001). Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Although this Court must "resolve factual controversies in favor of the nonmoving party," it must only do "where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (quoting Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Court must not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.

8

1994). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

   2. *Title VII Hostile Work Environment*

Dr. Heath's sole remaining Title VII claim on appeal involves alleged sex discrimination through the creation of a hostile work environment. Four elements are required to establish a hostile-work-environment claim: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on [a protected characteristic]; and (4) that the harassment affected a 'term, condition, or privilege' of employment." E.E.O.C. v. Boh Bros. Const. Co., 731 F.3d 444, 453 (5th Cir. 2013) (quoting Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div., 512 F.3d 157, 162–63 (5th Cir. 2007)). Harassment affects a "term, condition, or privilege" of employment when it is so severe or pervasive that it alters the conditions of employment and "create[s] an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)). In determining "whether a hostile work environment existed, a court must consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Moore v. United Parcel Serv., Inc., 150 F. App'x 315, 319 (5th Cir. 2005) (quoting Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)). An isolated offensive utterance is not sufficient to demonstrate a hostile work environment due to a protected characteristic. Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996) (quoting DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 595 (5th Cir. 1995)) ("[T]he 'mere utterance of an . . . epithet which engenders offensive feelings in an employee' is insufficient, without more, to support Title VII liability."); see Long v. Eastfield

9

Coll., 88 F.3d 300, 309 (5th Cir. 1996) (holding that an offensive joke concerning condoms told in the plaintiff's presence was insufficient to establish a hostile work environment claim on the basis of sex); Martin v. Winn–Dixie Louisiana, Inc., 132 F. Supp. 3d 794, 822–23 (M.D. La. 2015) (holding that plaintiff could not survive summary judgment when her harassment claims were based on two stray remarks: being offered candy though she was a diabetic and being told that she could not do her job and be pregnant); Jones v. Cont'l Cuisine, Inc., 353 F. Supp. 2d 716, 720–21 (E.D. La. 2004) (finding the plaintiff had not established a race based hostile work environment where the only evidence to support a racially hostile work environment was a manager's alleged use of the "n word" during one meeting). A hostile work environment must be found to "be both objectively and subjectively offensive." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).

Critically, Title VII is not a "general civility code."Faragher, 524 U.S. at 788 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)) (explaining that the elements of a hostile work environment claim "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"); Clark v. S. Broward Hosp. Dist., 601 F. App'x 886, 900 (11th Cir. 2015) (quoting Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1234 (11th Cir. 2006)) ("Title VII is not a 'general civility code' and does not make 'ordinary [workplace] tribulations' actionable, so not all objectionable language and conduct will support a Title VII harassment claim.") (alteration in original); Reine v. Honeywell Int'l Inc., 362 F. App'x 395, 397–98 (5th Cir. 2010) ("This high standard for judging hostility is specifically intended to prevent Title VII from becoming a 'general civility code' for the workplace."). The plaintiff must show that the conduct she complains of occurred *because of* the protected characteristic (here, Dr. Heath's sex). See Hervey v. Cty. of Koochiching, 527 F.3d 711, 722 (8th Cir. 2008) (quoting Pedroza v. Cintas Corp. No. 2, 397 F.3d 1063, 1068 (8th Cir.2005)) ("Even if we assume that

[defendants'] actions were abusive, [plaintiff] must 'prove that she was the target of harassment because of her sex and that the offensive behavior was not merely non-actionable, vulgar behavior.'"). Plaintiff's subjective belief that alleged harassment occurred because of a protected characteristic is not enough. Cavalier v. Clearlake Rehab. Hosp., Inc., 306 F. App'x 104, 107 (5th Cir. 2009) ("Though [the plaintiff] may believe that all twelve incidents were motivated by racial animus, subjective belief of racial motivation, without more, is not sufficient to show a hostile work environment."); Nichols v. Lewis Grocer, 138 F.3d 563, 570 (5th Cir. 1998) (quoting Little v. Republic Ref. Co., 924 F.2d 93, 96 (5th Cir. 1991)) ("[A] subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief.") (alteration in original).

The Eleventh Circuit Court of Appeals considered a case similar to the present one. In Clark, the plaintiff, a physician at a hospital, relied on the following acts to support her claim of hostile work environment based on sex:

> (1) not being selected to attend the two Hospital meetings because she was "too confrontational;" (2) Dr. Marks confronting and yelling at her on August 19, 2010; (3) being humiliated at the November 18, 2010 meeting about her unfair scheduling; and (4) after Plaintiff left that meeting, Dr. Macaluso asking the other doctors to document their complaints about Plaintiff.

Clark, 601 F. App'x at 899. The Eleventh Circuit concluded that the plaintiff had failed to offer any evidence that the incidents were "motivated by her gender." Id. at 900. The court explained that, "[a]t most, the incidents Plaintiff alleges demonstrate that her difficulties with co-workers resulted from serious and ongoing interpersonal conflicts between Plaintiff and her co-workers." Id. Summary judgment in favor of the defendants was affirmed.

Here, there is no dispute that Dr. Heath belongs to a protected class (female), and the defendants do not dispute (for the purposes of this motion), that Dr. Heath was subjected to

unwelcome harassment. However, Dr. Heath's Title VII claim cannot survive summary judgment because there is no evidence to establish that the harassment was based on her sex.

As a preliminary matter, the actions of which Dr. Heath complains do not indicate sex-based harassment in and of themselves. Dr. Heath claims that Dr. Elaasar did not assign her the course schedule she desired, did not allow her to work on grants, did not allow her to participate in committees, humiliated her during meetings, and undermined her to her students. Whether Dr. Elaasar took these actions because of an interpersonal conflict, because of some rational and work related reason, because of an animus towards women, or because of some other motivation, cannot be discerned from the actions alone. It is Dr. Heath's burden to show that these alleged hostilities occurred because of her sex. At this summary judgment phase, she has failed to establish that there is a disputed issue of material fact on this point.

Critically, there is no direct or admissible evidence of harassment based on her sex. The closest thing is Dr. Heath's testimony that Dr. Omojola told her that Dr. Elaasar thought she talked too much for a woman. It is this statement that Dr. Heath relies on to meet her burden under the third element. But it is not enough. As a preliminary matter, the Court notes that there is no testimony or declaration from Dr. Omojola regarding Dr. Elaasar's purported statement. As is, the statement is inadmissible hearsay. Further, an isolated statement like this is not sufficient to support a finding that Dr. Elaasar's negative treatment of Dr. Heath was due to her sex. See Weller, 84 F.3d at 194. Indeed, Dr. Heath admitted in her deposition that she has no recollection of Dr. Elaasar ever making a sex-based remark to her. Even if it were admissible, the single purported statement made in 2010 or earlier (well outside of the period relevant to this lawsuit),[3] does not tend to show that Dr. Elaasar harassed Dr. Heath differently because of her sex.

---

[3] Similarly, although Dr. Heath does not appear to rely on them, the Court notes that the email of Dr. Singleton and letter of Kaltenbaugh in early 2010 are outside of the period at issue here and cannot demonstrate that any harassment

Dr. Heath relies on the observations of her student Donald Anderson to show that the allegedly hostile work environment arose because of her sex, but his statements cannot support such a finding. In his declaration, Anderson states that he "**concluded from** Dr. Elaasar's state of mind and attitude" that Dr. Elaasar sought a submissive attitude from Dr. Heath. The Court notes that Anderson does not convey his recollection of any statements made by Dr. Elaasar during this meeting. For example, Anderson does not claim that Dr. Elaasar **said** he sought a submissive attitude. He does not claim that Dr. Elaasar **said** he sought a submissive attitude **because Dr. Heath is a woman**. According to Anderson's declaration, his conclusion that Dr. Elaasar sought a submissive attitude is based on Anderson's assessment of Dr. Elaasar's state of mind and attitude, not on any statements or actions of Dr. Elaasar that he experienced. The Court has been provided with no reason to believe that Anderson has any particular expertise in assessing an individual's motivations by analyzing his "attitude and state of mind." Additionally, while a submissive attitude may be a sex-based stereotype, there is nothing in Anderson's declaration that indicates Dr. Elaasar's alleged demand for a submissive attitude was based on Dr. Heath's sex. It could have been based on Dr. Heath's status as Dr. Elaasar's subordinate in the chain of command at SUNO; as Dean of the Math Department, Dr. Elaasar was in fact Dr. Heath's superior. Thus, even

---

during the relevant period was due to Dr. Heath's sex. Moreover, the statements do not tend to show that Dr. Elaasar was motived by Dr. Heath's sex. Dr. Singleton's February 2010 e-mail stated that in the SUNO math department, she is "working with a different culture of people (mostly males) who has been known to be dominating to woman." The statements in the email are general and fail point to any specific treatment of Dr. Heath (or Dr. Singleton). Singleton's assessment, at best, amounts to a subjective feeling without any objective evidence to corroborate it. "[A] subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief." 138 F.3d at 570 ((quoting Little., 924 F.2d at 96) (alteration in original). In addition, her comments largely relate to women in the sciences generally, and not specifically at SUNO, noting that sciences have long been male dominated. In fact, in another email in this chain, she specifically denies any belief that certain actions affecting the math department were gender based. The April 2010 Kaltenbaugh letter asking Dr. Adegboye to ensure that Dr. Heath was not "railroaded due to cultural and gender biases" is clearly based on Kaltenbaugh's discussion with Dr. Heath and not on her own personal experiences or observations of Dr. Elaasar. Moreover, there is nothing about the allegedly harassing conduct described second hand by Kaltenbaugh that suggests a sex-based motivation. Kaltenbaugh states merely that Dr. Heath told her that the math department was implementing a common final for all classes but that Dr. Heath had no input in creating the final. The Singleton email and Kaltenbaugh letter fail to even imply an objective basis for finding a connection between Dr. Elaasar's conduct and a prohibited sex-based bias.

Anderson's conclusory statements based on observations of Dr. Elaasar's state of mind do not suggest that Dr. Heath experienced harassment **because of her sex**.

Moreover, the record shows that during the course of the harassment, Dr. Heath herself did not attribute the harassment to her sex. In her September 19, 2012, letter to the vice chancellor of SUNO, she complained that she did "not understand why [Dr. Elaasar] holds [her] back." Similarly, in the undated letter Dr. Heath wrote to Dr. Mokossa, she complained Dr. Elaasar was creating a hostile work environment and said that he had demonstrated "personal hostility towards" her, but she did not suggest her sex as a possible reason. In her November 18, 2012, letter, she attributed Dr. Elaasar's treatment of her to "retaliation for the lawsuit." Again, sex as a basis for the treatment is conspicuously absent. In her 2013 EEOC Charge of Discrimination, Dr. Heath complained that "I believe that I have been retaliated against because I filed a lawsuit against [SUNO]."[4] The fact that she failed to reference sex as a reason for the alleged harassment while

---

[4] In fact, Dr. Heath's April 8, 2013 EEOC Charge does not include a sex-based claim at all. The check boxes on the EEOC's two forms are inconsistent with regard to what bases of discrimination she was claiming. On the Notice of Charge of Discrimination, only the box for "Retaliation" is checked off, not the box for "Sex." Rec. Doc. 67-6. On the actual Charge of Discrimination, which apparently was not signed, the boxes "Sex" and "Retaliation" are both checked. Rec. Doc. 67-5. However, a review of "the Particulars" in that document reflects quite clearly that the Charge only related to **retaliation for having previously filed a lawsuit, and not to her sex**.

> I filed a discrimination lawsuit in 2009 against Southern University At New Orleans, based on gender, female. **Since filing the lawsuit** I have been harassed, intimidated, and humiliated by Dr. Mustafa Elaasar, the chair of my department, to such a degree that it has detrimentally affected my physical and mental well being …
>
> The terms and conditions that he has placed upon me are intolerable and **I believe designed to punish me for filing the law suit**. …
>
> **I believe that I have been retaliated against because I filed a law suit** against Southern University At New Orleans, based on gender, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Id. (emphasis added). That the 2009 lawsuit happened to be based on "gender, female" is the only reference made in the Charge to sex. Instead, as highlighted above, Dr. Heath states three times in the short Particulars that Dr. Elaasar's motivation is retaliatory and punitive; she never even suggests it is based on her sex. Clearly, this does not state a claim for hostile work environment based on sex. Dr. Heath was apparently given the benefit of the doubt on this, however, and no defense was raised of failure to exhaust the sex discrimination claims as was asserted regarding her Title VII claims on race, religion, or national origin, which Judge Shushan then dismissed. Rec. Doc. 81, p. 18. Because the defendants did not raise this issue in their Motion for Summary Judgment, the Court does not now

the harassment was occurring, even though she asserted sex-based harassment in her 2009 lawsuit, is particularly notable. The 2009 lawsuit indicates that Dr. Heath knew that sex-based harassment could support a cause of action. Yet, long after 2009, Dr. Heath fails to attribute the harassment she was experiencing to her sex. This indicates that even Dr. Heath did not believe the harassment she allegedly experienced was because of her sex.

Additionally, the Court notes that before Dr. Elaasar was promoted to dean, he seemed to have a good relationship with Dr. Heath. He wrote glowing reviews of her performance and in a recommendation letter, he "strongly" recommended her for promotion and tenure. Specifically, Dr. Heath submitted a 1997-1998 faculty peer evaluation form in which Dr. Elaasar gave Dr. Heath perfect marks in all categories. He stated that Dr. Heath "is committed to Raise the Bar at SUNO. She organized many workshops to improve students and faculty performance. The computer lab that she founded is a big asset to the clinic. She is a nice person to work with and to ask for advice." (Rec. Doc. 70-3, at 11). Dr. Heath also submitted a 2001 recommendation letter written by Dr. Elaasar. In it, Dr. Elaasar compliments certain workshops organized by Dr. Heath and says that Dr. Heath offered help and guidance to him when he started at SUNO that made him "feel that SUNO is my home." (Rec. Doc. 70-3, at 8). He added that Dr. Heath "is an asset to SUNO. I strongly recommend her for tenure and promotion." Id. If Dr. Elaasar was motivated by sex-based stereotypes in his treatment of Dr. Heath, it is peculiar that he would have written such positive statements about her.

---

consider whether Dr. Heath's sex discrimination claim should be dismissed for failure to exhaust administrative remedies. As noted above, Judge Shushan's dismissal of Dr. Heath's Title VII retaliation claim on motion for summary judgment was affirmed on appeal by the Fifth Circuit, stating "We have not recognized a retaliatory hostile work environment cause of action." See Bryan v. Chertoff, 217 F. App'x 289, 293 (5th Cir. 2007). Rec. Doc. 89, p. 15, fn. 5.

While not determinative, the Court also notes that Dr. Singleton (another female professor in the math department) did not appear to experience the harassment of which Dr. Heath complains. Taken along with the dearth of evidence indicating a sex-based motivation for the harassment, this supports the Court's conclusion that Dr. Elaasar's actions were not based on Dr. Heath's sex.

While Dr. Heath now believes that the negative treatment she experienced is because of her sex, race, religion, national origin, and/or in retaliation for her 2009 lawsuit, this subjective belief is not enough for a jury to find that the harassment was in fact because of her sex. See Cavalier v, 306 F. App'x at 107; Nichols, 138 F.3d at 570. (Or, as discussed below, because of her race, religion or national origin). Like the plaintiff in Clark, Dr. Heath has, at best, demonstrated that she suffered from an ongoing interpersonal conflict with Dr. Elaasar, but the evidence cannot support a finding that Dr. Elaasar's conduct was motivated by Dr. Heath's sex. 601 F. App'x at 899. Accordingly, Defendants are entitled to summary judgment on Dr. Heath's Title VII claims.[5]

3. *Section 1983*

"[S]ection 1983 and Title VII are parallel causes of action." Cervantez v. Bexar Cty. Civil Serv. Comm'n, 99 F.3d 730, 734 (5th Cir. 1996). Accordingly, the same elements recited above required to establish a Title VII hostile work environment claim are applicable to Heath's § 1983 claim. See Fields v. Stephen F. Austin State Univ., 611 F. App'x 830, 833 (5th Cir. 2015) (applying the elements of a Title VII hostile work environment claim to assess a hostile work environment claim brought under § 1983 as an alleged violation of equal protection rights based on harassment due to race or sex); Whiting v. Jackson State Univ., 616 F.2d 116, 121 (5th Cir. 1980) (explaining

---

[5] Because Dr. Heath has failed to present any evidence on this essential element of her Title VII claim, the Court does not address whether the alleged harassment was severe and pervasive.

that the elements necessary to establish a Title VII claim are applicable to a § 1983 claim used as "a parallel remedy" to the Title VII claim).

Just as the undisputed facts fail to establish any basis for a finding that the alleged harassment experienced by Dr. Heath was due to her sex, there is no evidence to show that the alleged harassment was due to her race, national origin, or religion. The hostilities that Dr. Heath complains of are not, on their face, based on race, national origin, sex, or religion. As summarized above, Dr. Heath repeatedly attributed the alleged harassment to unknown reasons or retaliation in her letters to SUNO leadership. She did not complain that the harassment was because of her race, national origin, or religion. Further, her EEOC Charge in 2013 did not claim discrimination based on race, national origin, or religion. Her declaration attributes the alleged harassment to retaliation for the 2009 lawsuit—not her race, religion, or national origin. Not until her deposition in this case did Dr. Heath claim that she believed Dr. Elaasar's behavior was due to her religion or cultural differences between his Egyptian heritage and her Greek heritage. But even in this testimony, Dr. Heath also attributed Dr. Elaasar's actions to retaliation for the lawsuit and her sex. Importantly, Dr. Heath's self-serving deposition testimony cannot establish an animus based on race, national origin, or religion. The only other evidence that is related to religion is Dr. Heath's testimony that in 2005 or 2006, Dr. Elaasar told her that Muslims would one day kill all Christians. It is unclear from Dr. Heath's testimony whether this was a description of Dr. Elaasar's own views or the views of radical Muslims. Notably, Dr. Heath was not personally threatened by the discussion. And moreover, even if Dr. Elaasar was conveying his own religions views, this single remark in 2005 or 2006 is insufficient to show discrimination based on religion. There is not a shred of evidence indicating a race or national origin based reason for Dr. Elaasar's actions.

Indeed, even Dr. Heath's opposition to Defendants' Motion for Summary Judgment gives little attention to race, national origin, or religion, as a basis for the alleged harassment. On page 18, her counsel describes the "accumulation of gender-based harassment," that culminated in the student petition. Her statement of contested facts combines her Title VII and § 1983 hostile work environment claims into one section and cites only the observations of Dr. Heath's student, Anderson, as evidence that the alleged harassment was based on a protected characteristic. As discussed above, Anderson's conclusory observations do not support sex-based animus, let alone an animus based on religion, national origin, or race.

There is simply no evidence to support a finding that the allegedly hostile work environment was created because of Dr. Heath's sex, religion, national origin, or race. Her subjective beliefs, without more, cannot defeat summary judgment. Defendants are entitled to summary judgment on Dr. Heath's § 1983 claims.

## Conclusion

Construing all of the evidence in a light most favorable to Dr. Heath, the Court finds that Dr. Heath cannot establish a claim for sex-based harassment under Title VII or a claim for harassment based on sex, race, national origin, or religion under § 1983. Her claims fail because she cannot show that the alleged harassment was because of a protected characteristic. Accordingly, the Defendants' Motion for Summary Judgment is GRANTED.

New Orleans, Louisiana, this 12th day of July, 2017.

_____
Janis van Meerveld
United States Magistrate Judge